**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| DAVID PHILLIP VECHIL, | Case No. 3:25-CV-00195-CLB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR REMAND** |
| v. | |
| FRANK BISIGNANO,[1] Commissioner of Social Security, | [ECF No. 19] |
| Defendant. | |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying David Phillip Vechil's ("Vechil") application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently pending before the Court is Vechil's motion for reversal and remand. (ECF No. 19.) The Commissioner filed a responsive brief, (ECF No. 20), and Vechil filed a reply, (ECF No. 21). Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 10), the Court grants Vechil's motion for remand, (ECF No. 19).

I.      **STANDARDS OF REVIEW**

A.      **Judicial Standard of Review**

The Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which

---

[1]      Frank Bisignano is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of

subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.   Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual

does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20

C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual can do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.     CASE BACKGROUND

### A.     Procedural History

Vechil applied for disability insurance benefits ("DIB") on February 16, 2022, with an alleged disability onset date of November 30, 2015. (AR 35, 202, 211.) Vechil's application was denied initially on June 24, 2022, and upon reconsideration on December 13, 2022. (AR 197-211.) Vechil subsequently requested an administrative hearing and on February 13, 2024, Vechil and his attorney appeared at a telephonic hearing before an ALJ. (AR 170-96.) A vocational expert ("VE") also appeared at the hearing via telephone. (*Id.*) The ALJ issued a written decision on May 21, 2024, finding that Vechil was not disabled because he could perform other work that exists in significant numbers in the national economy. (AR 23-34.)  Vechil appealed ALJ's decision, and the Appeals Council denied review. (AR 1-6.) Accordingly, the ALJ's decision became the final decision of the

Commissioner. Having exhausted all administrative remedies, Vechil filed a complaint for judicial review on April 18, 2025. (*See* ECF No. 1.)

### B.    ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 23-34.) Ultimately, the ALJ disagreed that Vechil has been disabled from November 30, 2015, the alleged onset date, through December 31, 2020, the date last insured. (AR 33-34.) The ALJ held that, based on Vechil's RFC, age, education, and work experience, Vechil could perform past relevant work. (AR 33.)

In making this determination, the ALJ started at step one. Here, the ALJ found Vechil had not engaged in substantial gainful activity during the period from his amended alleged onset date of November 30, 2015, through his date last insured of December 31, 2020. (AR 25.) At step two, the ALJ found Vechil had the following severe impairments: lumbar degenerative disc disease and tinnitus. (AR 25-29.) At step three, the ALJ found that through the date last insured, Vechil did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (AR 29-30.)

Next, the ALJ determined Vechil has the RFC to perform medium work as defined by 20 CFR 404.1567(c) except:

> He can occasionally climb ladders, ropes, or scaffolds and crawl; can frequently climb ramps and stairs and stoop; can have moderate noise exposure, i.e., office-level noise; can have frequent exposure to hazards; and would be off-task three to five percent of the workday.

(AR 30.)

The ALJ found Vechil's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Vechil's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 31.) In reaching this

conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Vechil's credibility. (AR 30-32.) The ALJ then determined that Vechil is capable of performing past relevant work, as security guard and electronics mechanic, as actually or generally performed. (AR 33.)  Accordingly, the ALJ held that Vechil had not been under a disability since November 30, 2015, the alleged onset date, through December 31, 2020, the date last insured, and denied Vechil's claim. (AR 34.)

III.    ISSUE

Vechil seeks judicial review of the Commissioner's final decision denying DIB under Title II of the Social Security Act. (ECF No. 19.) Vechil raises two issues for the Court's review:

> (1)    Whether the ALJ erred in assessing a limitation in Vechil's RFC that he would be off-task three to five percent of the workday; and
>
> (2)    Whether the ALJ's determination of the credibility of Vechil's subjective symptoms is supported by substantial evidence.

(*Id.* at 5-16.)

IV.    DISCUSSION

A.    **ALJ Erred in Assessing the Time Off-Task Limitation in Vechil's RFC**

Vechil first argues the ALJ's RFC assessment is not supported by substantial evidence as to the three to five percent time off-task limitation. (ECF No. 19 at 5-11.) In determining Vechil's RFC, the ALJ must consider all the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. When reviewing the ALJ's decision, the Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). An ALJ's decision is not supported by substantial evidence when the ALJ does not "explain the evidentiary basis"

for an aspect of their RFC assessment. *Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at \*2 (9th Cir. July 5, 2023). The court "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)). The ALJ's failure to "build an accurate and logical bridge" from the record to her RFC assessment, and failure to "provide sufficient reasoning" precludes the Court from conducting meaningful review. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work. *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). However, when an ALJ decides severity or residual functional capacity "without the support of any of the medical opinion evidence," it constitutes error. *Walker v. Comm'r of Soc. Sec.*, No. 2:22-cv-1871-EJY, 2024 WL 64784, at \*6 (D. Nev. Jan. 4, 2024) (quoting *Holtan v. Kijakazi*, No. 2:22-cv-01222-VCF, 2023 WL 2424648, at \*3 (D. Nev. Mar. 9, 2023)); *see Robert C. v. Kijakazi*, No. 2:22-CV-01617-VCF, 2023 WL 5816743, at \*4 (D. Nev. Sept. 8, 2023) ("[U]nlike *Farlow*, in this case the ALJ is not rejecting a medical opinion considering specific evidence but rather creating her own medical opinion."). The ALJ must include all of a claimant's impairments in the RFC assessment. 20 C.F.R. §§ 404.1545, 416.945; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). Because the assessment of a claimant's RFC is essential to steps four and five of the sequential analysis in determining whether a claimant can still work despite severe medical impairments, an improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.' " SSR 96-8p. Accordingly, "an RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r. of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

Vechil argues the ALJ erred in assessing his RFC by finding he would only be off-

task three to five percent of the workday because the limitation is unsupported by the medical record, as no physician opined that Vechil would be off-task three to five percent of the workday. (ECF No. 19 at 5-11.) Vechil further argues the ALJ's limitation is impermissibly based on her "lay opinion" without a logical bridge to medical evidence in the record. (*Id.*) Finally, Vechil argues the ALJ's error is harmful because the VE testified that an individual who is off-task 10 to 15% of the time would be unemployable. (*Id.* at 8-9.) In opposition, the Commissioner argues the time off-task limitation is supported by medical evidence in the record, however, even if the limitation did constitute error, Vechil has not shown that such error was consequential to the ultimate nondisability determination. (ECF No. 20 at 4-7.)

In this case, the ALJ explained the time off-task limitation in Vechil's RFC as follows: "to account for the effects of his pain, as well as his non-severe impairments, I find that the claimant would be off-task three to five percent of the workday." (AR 32.) This does not meet the requirement for the ALJ's decision to be as "comprehensive and analytical as feasible" such that the Court could determine the basis of the off-task limitations within Vechil's RFC assessment. *See Gonzalez*, 914 F.2d at 1200 ("An examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the. ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.") (citing *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981)); *see also Mix v. Dudek*, No. 3:24-cv-00387-CLB, 2025 WL 914413, at *5 (D. Nev. Mar. 26, 2025) (finding ALJ erred because she failed to cite to any "medical opinion or recognized authority that forms the basis for this [time off-task] limitation."); *Lovato v. Berryhill*, No. 6:16-cv-00046-JR, 2017 WL 2371096, at *6 (D. Or. May 9, 2017) ("Based on this record, the Court is unable to discern what substantial evidence supported the ALJ's conclusion that plaintiff would be off-task 9% of the time, beyond the VE's testimony that a larger percentage would necessitate a finding of disability."); *Oliverson v. Berryhill*, No. 2:16-cv-01538-KLS, 2017 WL 1381814, at *11 (W.D. Wash. Apr. 17, 2017) ("The Court also

agrees with plaintiff that the ALJ failed to point to any evidence in the record – or offer any explanation – to support the limitation of being off-task for up to 9% of the time. Accordingly, the ALJ erred here as well.").

As the ALJ did not "explain the evidentiary basis" for the time off-task limitation of Vechil's RFC, substantial evidence does not support the ALJ's RFC assessment. *Leitz*, 2023 WL 4342114, at *2. However, the Commissioner argues that the Court should still affirm the ALJ's decision because the error in evaluating the time off-task limitation was harmless. (ECF No. 20 at 5-7.)

A reviewing court "may affirm the ALJ's decision even if the ALJ made an error, so long as the error was harmless, meaning it was inconsequential to the ultimate nondisability determination." *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (cleaned up); *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The party arguing reversible error "carries the burden of showing that prejudice resulted" from the error and that burden "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 408 (2009).  Additionally, the Ninth Circuit has held that where an ALJ did not provide enough "reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence," the error cannot be treated as harmless. *Treichler*, 775 F.3d at 1103; *see also Brown-Hunter*, 806 F.3d at 494-95.

In his motion for remand, Vechil argues the ALJ's error in assessing the time off-task limitation constitutes harmful error because the VE testified at the hearing that if an individual would be unemployable if they were off-task 10 percent of the time at Specific Vocational Preparation ("SVP") level 2 or 3 or off-task 15 percent of the time at SVP level 5, 6, or 7. (ECF No. 19 at 8 (citing AR 194).) Vechil argues that because a higher percentage time off-task limitation would render him unemployable, the ALJ erred in failing to explain why she arrived at three to five percent time off-task where no medical opinions support a limitation to being off-task only three to five percent. (*Id.* at 8-11.)

As discussed above, the ALJ erred in failing to adequately explain the basis for the

time off-task limitation in Vechil's RFC. As the ALJ did not provide sufficient "reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence," the error cannot be treated as harmless. *Treichler*, 775 F.3d at 1103; *see also Brown-Hunter,* 806 F.3d at 494-95. Moreover, the VE's testimony indicated that if Vechil was limited to 10 or 15 percent off-task he would be found unemployable and therefore disabled, meaning the time off-task limitation was consequential to the ultimate nondisability determination. *Ford*, 950 F.3d at 1159.

Therefore, because the time off-task portion of the ALJ's RFC assessment is not supported by substantial error and the error is not harmless, the Court grants Vechil's motion to remand as to this issue. Because additional proceedings can remedy defects in the original administrative proceeding, the Court finds that this case should be remanded for rehearing on the issue of the time off-task limitation in Vechil's RFC. *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (citing *Lewin,* 654 F.2d at 635). On remand, the ALJ should explain her RFC assessment more thoroughly as to the off-task percentage and establish the logical bridge between the evidence in the record – including medical opinion evidence – and the time off-task limitation in Vechil's RFC. *See Lambert*, 980 F.3d at 1277.

### B.    ALJ Properly Evaluated Vechil's Subjective Symptom Testimony

Vechil next argues the ALJ failed to articulate clear and convincing reasons for discounting Vechil's subjective symptoms and limitations. (ECF No. 19 at 11-16.) "[T]he ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *see also Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2018) (as amended); *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). "First, the ALJ must determine whether the claimant has

presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted); *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (quoting *Garrison*, 759 F.3d at 1014; *see also Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged." (citing *Reddick*, 157 F.3d at 722)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted); *see also Smith*, 14 F.4th at 1113 ("In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." (internal citations omitted)).

In weighing a claimant's credibility, the ALJ may consider their reputation for truthfulness; inconsistencies either in their testimony or between their testimony and their conduct; their daily activities; work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which they complain. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted); *see Rounds v. Comm'r Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015) (as amended) (to assess credibility the ALJ "may consider, among other factors, 'ordinary techniques of credibility evaluation,' 'inadequately explained failure to seek treatment or to follow a prescribed course of treatment,' and 'the claimant's daily activities.' " (citation omitted)).

In her decision, the ALJ found that Vechil's subjective symptom testimony was not

12

consistent with the objective medical and other evidence. (AR 31.) In so finding, the ALJ first described Vechil's subjective symptom testimony:

> The claimant alleges that he is disabled due to his impairments. More specifically, he stated that he is limited by pain, which causes difficulty sitting or standing for longer than 10 to 30 minutes at a time. [(AR 170-96, 394-401.)] He further indicated that he has difficult with lifting, squatting, bending, standing, reaching, sitting, kneeling, talking, hearing, and climbing stairs. [(*Id.*)] He estimated that he can walk three quarters of a mile before needing to rest for 10 to 15 minutes and lift up to 15 pounds. [(AR 394-401.)] At the hearing, he stated that he can lift up to 20 pounds without pain. [(AR 170-96.)] He also stated that he has difficulty hearing. [(AR 170-96, 394-401.)]

(AR 30.)

The ALJ next discussed the objective evidence relating to Vechil's lumbar degenerative disc disease. The ALJ pointed to medical evidence showing that in spring of 2016, while Vechil reported incidences of discs slipping out about three times per year, causing "ten out of ten pain[,]" his "[m]usculoskeletal physical examination was largely unremarkable, including no tenderness to palpation, weakness, or abnormal reflexes, though with positive straight leg raising on the left" and a "lumbar spine MRI showed mild degenerative disc disease at L4-5 with mild midline annular fissure." (*Id.* (citing AR 595, 597-99).) The ALJ noted that Vechil's pain was "treated conservatively with non-opioid medication." (*Id.* (citing AR 599).) The ALJ next discussed Vechil's reported a flare up of low back pain November 2016, "ranging from six to ten in severity, and radiating into the bilateral lower extremities" and how in April of 2019, Vechil was observed with a normal gait. (*Id.* (citing AR 586, 592).) The ALJ pointed to reports in December of 2021 where Vechil rates his back pain at a "two out of ten in severity." (*Id.* (citing 483).) The ALJ noted that Vechil "treated the pain conservatively, with ibuprofen" as well as muscle relaxants, and that Vechil reported that the ibuprofen "helps" his pain. (*Id.*)  Next, the ALJ describes that in May of 2023, Vechil reported being active and his physical examination was "unremarkable." (*Id.* (citing 781-82).) Finally, the ALJ notes that Vechil was observed with normal gait in December 2023. (*Id.* (citing AR 821).)

As to Vechil's tinnitus, the ALJ described how the medical record repeatedly

includes this diagnosis. (*Id.* (citing AR 472, 504, 514, 531, 574, 669, 779-80, 814, 820, 822).) The ALJ then discussed how Vechil reported that his tinnitus was stable in March 2023 and that the "remainder of the record does not indicate ongoing treatment for this condition, nor difficulty communicating with his providers." (*Id.* (citing AR 462-856).)

The ALJ concluded by explaining:

> Based on the foregoing, including the claimant's mild physical examination findings, imaging, and conservative course of treatment, I find that the claimant's limitations are not as severe as alleged. [(AR 482-83, 586, 595, 597-99, 782, 821.)] This finding is further supported by his reported activities of daily living and abilities, such as preparing simple meals, shopping, and doing household chores such as cleaning and laundry. [(AR 391-401.)]

(AR 31.)

Vechil argues the ALJ erred in discounting his subjective symptom testimony because: (1) the ALJ did not explain how specific testimony conflicted with the medical evidence; (2) in finding that Vechil conservatively treated his impairments, the ALJ failed to identify what other aggressive treatment options would be commensurate with Vechil's symptom testimony; and (3) the ALJ failed to make specific findings regarding how Vechil's daily activities were inconsistent with his subjective symptom testimony. (ECF No. 19 at 11-16.) The Court will address each argument in turn.

### 1.      Consistency with Medical Evidence

In his motion for remand, Vechil argues that the ALJ erred in failing to explain how specific portions of Vechil's testimony conflicted with the medical evidence. (ECF No. 19 at 15-16.) As outlined above, the ALJ discussed Vechil's testimony regarding his physical limitations: sitting or standing for longer than 10 to 30 minutes at a time; difficulty with lifting, squatting, bending, standing, reaching, sitting, kneeling, talking, hearing, and climbing stairs; walking three quarters of a mile before needing to rest for 10 to 15 minutes; and ability to lift up to 15 to 20 pounds without pain. (AR 30 (citing AR 170-96, 394-401).) The ALJ then discussed medical evidence showing unremarkable physical examinations in 2016 and 2021, and observations from medical providers that Vechil had a normal gait in 2019 and 2023. (AR 31 (citing AR 586, 595, 597-99, 781-82, 821).) After

14

discussing these specific portions of Vechil's testimony and the medical record, the ALJ concluded that "[b]ased on the foregoing, including the claimant's mild physical examination findings, imaging, and conservative course of treatment, I find that the claimant's limitations are not as severe as alleged." (AR 31 (citing AR 482-83, 586, 595, 597-99, 782, 821).) The ALJ therefore did identify what testimony is not credible and what evidence undermines the Vechil's complaints. *Berry*, 622 F.3d at 1234 (citation omitted); *see Smith*, 14 F.4th at 1113.

In reply, Vechil argues that the fact that Vechil's complaints were not supported by objective medical evidence cannot form the sole basis for the ALJ's credibility determination, citing SSR 16-3p. (ECF No. 21 at 7.) However, as discussed below, the ALJ's credibility determination is supported based on her findings that Vechil conservatively treated his impairments and that his daily activities did not support the extent of Vechil's alleged limitations. *See Buckner-Larkin v. Astrue*, 450 F. App'x 626, 628 (9th Cir. 2011) (finding "the ALJ pointed to clear, specific, and cogent reasons" for discounting the claimant's subjective complaints where the ALJ pointed to "inconsistencies between her complaints and medical evidence, her daily activities, and the success of conservative treatment."). Moreover, the Ninth Circuit has repeatedly upheld ALJ decisions where the ALJ finds that "objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis original) (citations omitted) (collecting cases). Therefore, the Court finds that the ALJ did not err in finding that Vechil's subjective symptom testimony conflicted with the medical evidence in the record.

### 2.    Conservative Treatment and Improvement

Vechil next argues that the ALJ erred in finding that Vechil conservatively treated his impairments because the ALJ failed to identify what other aggressive treatment options would be commensurate with Vechil's symptom testimony. (ECF No. 19 at 15.)

Evidence of "conservative treatment" is sufficient to discount a claimant's

testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). The type and degree of treatment a claimant seeks "is powerful evidence" regarding the extent of symptoms. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Claims about disabling pain are undermined by favorable response to conservative treatment. *Tommasetti*, 533 F.3d at 1039-1040. However, "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist," *Lapeirre-Gutt v. Astrue*, 382 Fed.Appx. 662, 664 (9th Cir. 2010), or where the claimant has a good reason for not seeking more aggressive treatment. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Vechil argues specifically that the ALJ erred in failing "to identify what other aggressive treatment options would be commensurate with Vechil's symptom testimony." (ECF No. 19 at 15.) However, as the Commissioner points out in his brief, Vechil does not provide authority showing that the ALJ is required to provide such options. (ECF No. 20 at 11.) In reply, Vechil cites to *Cortes v. Colvin*, No. 2:15-CV-2277-GJS, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016), in support of the proposition that the ALJ "must identify more aggressive treatment options that would be commensurate with [Vechil]'s symptom testimony." (ECF No. 21 at 7.) Although *Cortes* does state that "an ALJ errs in relying on conservative treatment if 'the record does not reflect that more aggressive treatment options are appropriate or available[,]'" *Cortes* does not state that the ALJ erred

because he failed to list alternative aggressive treatment options.  2016 WL 1192638, at *4 (quoting *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010)). Furthermore, the discussion relating to conservative treatment in *Cortes* concerned the ALJ's use of the claimant's allegedly conservative treatment to discredit the severity of limitations indicated by medical opinions in the record, not in relation to the claimant's subjective symptom testimony. *Id.* Thus, the Court does not find that the ALJ erred in failing to identify what other aggressive treatment options would be commensurate with Vechil's symptom testimony.

In this case, the ALJ pointed to multiple portions of the medical record showing that Vechil has treated his lumbar degenerative disc disease with non-opioid pain medication, such as ibuprofen and muscle relaxants. (AR 31.) In the discussion of the medical evidence, the ALJ notes that the record reflected conservative treatment in 2016 and 2021, and that the ibuprofen helps manage Vechil's pain. (*Id.*) Based on this record, it was reasonable for the ALJ to conclude that Vechil has been conservatively treating his back pain. *See Tommasetti*, 533 F.3d at 1039-40 (classifying physical therapy and anti-inflammatory medication, TENS unit, and a lumbosacral corset as conservative treatment for allegedly debilitating back pain); *Parra*, 481 F.3d at 750-751 (classifying over-the-counter pain medication as a conservative course of treatment for knee pain); *Carmickle*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding conservative treatment where claimant took only ibuprofen to treat pain). Furthermore, the record does not reflect that Vechil's medical providers – or Vechil himself – found that treatment more aggressive than ibuprofen and muscle relaxants was recommended or necessary. Therefore, the ALJ did not err in finding that evidence of Vechil's conservative treatment of his back pain discounted his testimony regarding the severity of his impairment. *Parra*, 481 F.3d at 751 (citing *Johnson*, 60 F.3d at 1434).

### 3.    Daily Activities

Finally, Vechil argues the ALJ erred in failing to "draw a nexus" between Vechil's daily activities and the ability to engage in full-time work on a consistent basis. (ECF No.

19 at 14.) An ALJ may discredit a claimant's testimony when he reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Molina*, 674 F.3d at 1112-13; 20 C.F.R. § 404.1529(c)(3)(i). The inconsistency between a claimant's alleged symptoms and his daily activities is sufficient to support a finding that a plaintiff was not entirely credible. *See Lingenfelter*, 504 F.3d at 1040 (in determining credibility, an ALJ may consider "whether claimant engaged in daily activities inconsistent with alleged symptoms"). Specifically, daily activities may be grounds for discrediting a claimant's testimony when a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting." *Fair v. Brown*, 885 F.2d 597, 603 (9th Cir. 1989). Even when such activities suggest some difficulty functioning, the ALJ may discredit a claimant's testimony to the extent they contradict claims of a totally debilitating impairment. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1225 (9th Cir. 2010).

In the decision, the ALJ stated that Vechil's reported activities of daily living and abilities, such as preparing simple meals, shopping, and doing household chores such as cleaning and laundry, supported the ALJ's finding that Vechil's limitations were not as severe as alleged. (AR 31 (citing AR 396-99).) It is critical to note that the ALJ did not use Vechil's reported daily activities as evidence that Vechil could perform his past relevant work, nor did Vechil's daily activities form the sole basis for the ALJ's discounting of Vechil's subjective symptom testimony. (*Id.*) Rather, the ALJ permissibly pointed to specific activities which contradicted Vechil's alleged limitations in finding that Vechil was not as limited as alleged. *Lingenfelter*, 504 F.3d at 1040, *Turner*, 613 F.3d at 1225. The interpretation of Vechil's daily activities is reasonable and therefore must be supported, even if the evidence could be interpreted in another fashion. *Orteza,* 50 F.3d at 749 (citation omitted).

In conclusion, the Court finds that the ALJ's evaluation of Vechil's subjective symptom testimony is supported by substantial evidence because the ALJ properly relied on specific reasons for discounting Vechil's allegations by pointing to inconsistencies

between his complaints and medical evidence, his conservative treatment, and his daily activities. *See Buckner-Larkin*, 450 F. App'x at 628; *Rounds*, 807 F.3d at 1006.

## V.      CONCLUSION

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ's assessment of the time off-task limitation in Vechil's RFC was not supported by substantial evidence and constitutes harmful error. However, the Court also finds that the ALJ's evaluation of Vechil's subjective symptom testimony was supported by substantial evidence.

Accordingly, **IT IS THEREFORE ORDERED** that Vechil's motion to remand, (ECF No. 19), is **GRANTED IN PART** and **DENIED IN PART** as follows:

- Vechil's motion for remand is **GRANTED** as to the time off-task limitation in Vechil's RFC.
- Vechil's motion for remand is **DENIED** as to the ALJ's evaluation of Vechil's subjective symptom testimony.

**IT IS FURTHER ORDERED** that this matter be **REMANDED** to the agency for further proceedings in accordance with this Order.

**DATED**: February 10, 2026.

_____
**UNITED STATES MAGISTRATE JUDGE**